UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kellie A. Ouellette,
    Claimant

    v.

Nancy A. Berryhill, Deputy Commissioner
For Operations, Performing the duties
and functions not reserved to the
Commissioner of Social Security,
    Defendant

Case No. 17-cv-409-SM
Opinion No. 2018 DNH 124

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Kellie A. Ouellette, moves to reverse the Acting Commissioner's decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c). The Deputy Commissioner for Operations objects and moves for an order affirming the decision.

For the reasons discussed below, claimant's motion is granted, and the Commissioner's motion is denied.

**Factual Background**

I.  Procedural History

On August 19, 2014, claimant protectively filed applications for Disability Insurance Benefits ("DIB"), and Supplemental Security Income, alleging that she was disabled and had been unable to work since June 9, 2014. Those applications were denied on November 14, 2014, and claimant requested a hearing before an Administrative Law Judge ("ALJ").

On May 4, 2016, claimant, her attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's application de novo. On May 25, 2016, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, through the date of his decision. Claimant then requested review by the Appeals Council. The Appeals Council denied claimant's request for review. Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Acting Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion to Reverse Decision of the Commissioner" (document no. 11). In response, the Acting

Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 12). Those motions are pending.

II. Stipulated Facts

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 17), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

This court's review of the ALJ's decision is, therefore, both limited and deferential.  The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act.  Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  Provided the ALJ's findings are properly supported by substantial evidence, the court must sustain those findings <u>even when there may also be substantial evidence supporting the contrary position</u>.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

II. The Parties' Respective Burdens

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience. See Vazquez v. Secretary of Health & Human

Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm the decision.

**Background - The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability, June 9, 2014. Admin Rec. at 30. He next concluded that claimant suffers from the following severe impairments: "fracture of the right upper extremity, status post two surgeries (June 2014 and January 2015) with capsulitis; and lumbar spine degenerative disc disease." Admin. Rec. at 30-32. However, the ALJ determined that claimant's impairments, whether considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1 of the regulations. Id. at 32-33.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can lift and carry 10 pounds occasionally. She can sit 6 hours and stand and walk 6 hours in an eight-hour workday. After 1 hour of sitting, she must be able to stand for 5 minutes and after 1 hour of standing and walking[,] be able to sit for 5 minutes, remaining on task. She can

> never climb ladders, ropes, or scaffold, never crawl,
> frequent balance on uneven surfaces, occasionally
> stoop, kneel and crouch. She can never reach in any
> direction with the right (dominant) upper extremity.
> She can never operate hand controls with the right
> (dominant) upper extremity. She must avoid exposure
> to extreme cold, vibration, or moving mechanical
> parts.

Admin. Rec. at 33. In light of those restrictions, and based on the testimony of the vocational expert, the ALJ concluded that claimant was not capable of performing her past relevant work. Id. at 37.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying on the testimony of the vocational expert, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 39. The ALJ then concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

## Discussion

In support of her motion to reverse the ALJ's decision, claimant raises the following errors: (1) the ALJ erred by failing to consider Listing 1.08 because claimant's condition met or equaled its criteria; (2) the ALJ erred in failing to adequately account for claimant's functional limitations due to pain; (3) the ALJ erred in weighing the medical opinion

evidence, specifically the opinions of Dr. J. Andrew McMahon and Dr. Sandra Vallery; and (4) the ALJ erred in relying on vocational expert testimony that was inconsistent with the Dictionary of Occupational Titles. Because the ALJ's assessment of the limitations imposed upon claimant by reason of her back impairment lacks adequate support in the medical opinions of record, that issue is dispositive of this appeal.

1. Claimant's Back Impairment

Claimant takes issue with the ALJ's treatment of the opinion of Dr. McMahon, an orthopedist who treated claimant for back pain. She argues that, as a treating source, Dr. McMahon's opinion is entitled to controlling weight because it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) not inconsistent with other substantive evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Claimant points out that the other medical source opinions in the record regarding claimant's capacity to stand or walk predate her assessment and treatment for back pain (in August of 2015). Therefore, she says, the opinion issued by Dr. Andrew McMahon in April, 2016, is the only expert opinion based on medical evidence related to claimant's August, 2015, diagnosis of lumbar radiculopathy; her December, 2015, MRI showing degenerative changes in the lower lumbar spine; and her

9

failure to respond to conservative treatment, including physical therapy and sacroiliac injection.

As claimant's argument implies, what complicates the analysis is the progressively degenerative nature of her back impairment. While the record is not entirely consistent on the issue, pain resulting from her back impairment seemingly increased as her application for benefits was administratively processed. According to claimant, her back pain began following a fall in June, 2014, during which she broke her humerus and dislocated her shoulder. Admin. Rec. at 623. However, claimant's initial Disability Report, dated September 3, 2014, does not reference a back impairment. See Admin. Rec. at 209. Neither does her Function Report, completed on September 24, 2014, in which claimant indicated that she has no difficulties standing, walking, sitting, standing, squatting or bending. Admin. Rec. at 231.

Claimant did not seek treatment for her back pain until more than a year after her June, 2014, accident, when she visited Dr. McMahon, an orthopedist, for lumbar pain (August, 2015). Admin. Rec. at 623. Claimant complained of "[t]ingling, numbness[,] and pain radiat[ing] down her right leg." Admin. Rec. at 623. Dr. McMahon observed "minimal [p]araspinal hypertonicity and spasm, tenderness over the PSIS, minimal

10

pinformis and sciatic notch tenderness," a negative straight leg raise test, and a positive dural tension test. Admin. Rec. at 624. Dr. McMahon diagnosed lumbar radiculopathy, recommended physical therapy, and prescribed a course of prednisone to treat any inflammatory component of her impairment.

Claimant began physical therapy in September, 2015, with Aaron Kahn, a nurse practitioner, who offered the following assessment:

> Thoracolumbar range of motion is impaired, postural mechanics are impaired, thoracolumbar joint mobility is hypomobile, and tenderness present bilaterally along spinal column especially along paraspinals, quadratus lumborum and distally to the muscles of the buttocks especially pyriformis. Patient presents with decreased bilateral lower extremity strength.

Admin. Rec. at 604. Following 12 sessions of physical therapy, and a course of prednisone, claimant returned to Dr. McMahon's office on November 25, 2015. Admin. Rec. at 620. She reported that her symptoms had not improved: she was still experiencing ongoing radicular pain and weakness; Tylenol and ibuprofen were no longer offering her any relief from the pain. Admin. Rec. at 620. Dr. McMahon again observed "minimal [p]araspinal hypertonicity and spasm," and ordered an MRI "to better assess her lumbar spine." Id. at 621. He prescribed muscle relaxants "to see if she gets some relief." Id.

An MRI was completed on December 8, 2015. Admin. Rec. at 618. It showed "mild to moderate degenerative changes in the lower lumbar spine, resulting in mild neuroforaminal narrowing," and no significant spinal narrowing. Id. Dr. McMahon recommended either a referral to a spine specialist, or a sacroiliac joint injection. Id. Subsequently, at an appointment on March 3, 2016, Dr. McMahon administered a sacroiliac joint injection to relieve claimant's symptoms. Admin. Rec. at 616.

At the hearing before the ALJ on May 4, 2016, claimant testified that her back pain was exacerbated by "[s]tanding, walking, grocery shopping, sitting for any length of time." Admin. Rec. at 59. To treat the pain, claimant said, she takes Tylenol and Flexeril, which keep her pain levels at a five or six out of ten, and that, while she had been prescribed narcotic medication, she was "afraid of being addicted to pain meds." Id. at 61-62. Physical therapy did not help, but instead "cause[d her] more pain." Id. at 63. The recent joint injection in her back had provided only "temporary relief." Id. at 64.

2. Record Medical Opinions

There are three medical opinions in the record related to claimant's functional limitations. In October, 2014, the state agency non-examining physician, Dr. Sochat, reviewed claimant's medical records up to that date. At that time, none of claimant's medical records (or, again, claimant's Function Report) reflected any issues or limitations related to her back. Dr. Sochat opined that claimant could stand and/or walk for about six hours in an eight-hour work day. In his decision, the ALJ correctly recognized that Dr. Sochat's assessment was:

> speculative and assessed shortly after the initial injury and application. Treatment record received since reflect additional surgery and persistent issues that are better reflected in the later functional assessments of the treating sources.

Admin. Rec. at 36.

Months later, on March 24, 2015, Dr. Mayo Noerdlinger, an orthopedist and colleague of Dr. McMahon's, who treated claimant for her shoulder impairment, completed a Medical Source Statement. Admin. Rec. at 360. That statement indicates that claimant's impairment did not impact her ability to stand or walk. Admin. Rec. at 360. The ALJ gave Dr. Noerdlinger's opinion great weight, finding it "generally consistent with the

13

objective findings and course of treatment documented in the medical record." Id. at 36.

Finally, Dr. McMahon completed a Medical Source Statement on April 11, 2016. See Admin. Rec. at 365-68. In that statement, Dr. McMahon opined, inter alia, that claimant was capable of standing and/or walking for at least two hours in an eight-hour workday because her diagnosis of lumbar radiculopathy limits her "ability to sit/stand." Id. at 366. The ALJ gave Dr. McMahon's finding "little weight because it is not consistent with the objective findings and minimal substantive treatment for the back impairment." Admin. Rec. at 36.

Review of the record makes clear that the only medical opinion in the record directly addressing claimant's functional limitations arising from her back injury is Dr. McMahon's. Both Dr. Sochat and Dr. Noerdlinger issued their medical opinions regarding claimant's functional limitations before claimant sought treatment for her degenerative back impairment, before her MRI, and before her diagnosis. Because Dr. Sochat and Dr. Noerdlinger were presumably unaware of, or unfamiliar with claimant's back impairment, neither considered the impairment when issuing their opinions (and they necessarily could not have considered claimant's MRI, which post-dated both opinions). Since the only medical opinion in the record that addresses

14

claimant's back impairment is Dr. McMahon's, Dr. McMahon's findings concerning claimant's functional limitations arising from her back impairment cannot be labeled "inconsistent" with other medical opinions in the record.

Given the absence of any other "on point" medical opinions in the record to the contrary, the administrative decision appears to run afoul of the rule that generally precludes ALJs from interpreting raw medical data, or determining a claimant's RFC without expert opinion support. See Durgin v. Berryhill, No. 16-cv-451-SM, 2017 WL 3432611, at * (D.N.H. July 24, 2017) (citing Nguyen, 172 F.3d at 35); Santiago v. Sec'y of HHS, 944 F.2d 1, 7 (1st Cir. 1991)). While the ALJ did not explain what "objective medical findings" were inconsistent with Dr. McMahon's finding regarding claimant's standing and walking limitations, the Commissioner argues here that the ALJ's decision is supported by the MRI. That argument illustrates the problem. To the extent the ALJ independently interpreted claimant's MRI, the ALJ impermissibly substituted his "medical" judgment for that of a physician. As this court has previously noted:

> The court of appeals for this circuit has repeatedly held that since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare

> medical record. Accordingly, when assessing a
> claimant's RFC, the general rule is that an expert is
> needed to assess the extent of functional loss.

Jabre v. Astrue, No. 11-CV-332-JL, 2012 WL 1216260, at *8

(D.N.H. Apr. 5, 2012) (citations and internal punctuation

omitted), report & recommendation adopted sub nom. Jabre v. US

Soc. Sec. Admin., No. 11-CV-332-JL, 2012 WL 1205866 (D.N.H. Apr.

9, 2012). And, of course, neither the Deputy Commissioner, nor

her legal counsel are in a position to offer any medical

assessments.

The Commissioner relies on Gobis v. Colvin, No. 15-CV-268-

SM, 2016 WL 4257546, at *4 (D.N.H. Aug. 12, 2016), and Westhaver

v. Astrue, No. 09-12032-DPW, 2011 WL 3813249, at *10 (D. Mass.

Aug. 26, 2011). But neither Gobis nor Westhaver supports the

Commissioner's argument. In Gobis, 2016 WL 4257546, at *4, the

ALJ declined to afford controlling weight to a treating source

opinion because that opinion was inconsistent with substantial

evidence in the record, including several medical opinions that

directly addressed the impairment. Similarly, in Westhaver, the

ALJ's decision to give the treating physician's assessment

little weight was supported by the reports of other treating

physicians "who specifically assessed [claimant's] lower back

pain," and "found little restriction in movement or strength."

Westhaver, 2011 WL 3813249, at *10.

The ALJ's other stated reason for discounting Dr. McMahon's opinion, claimant's "minimal substantive treatment for the back impairment," admin. rec. at 36, also poses a problem in context. Given the degenerative nature of claimant's impairment, and because reference is not tied to a specific time, it remains unclear what treatment was thought to be minimal. Once claimant sought treatment for her back impairment, beginning in August, 2015, she "continually sought and received treatment for back-pain," completing a regimen of physical therapy, a course of prescribed steroids, obtaining an MRI, and receiving a sacroiliac joint injection, all within a fairly short period of time. Nguyen, 172 F.3d at 36. Accordingly, "[t]his is not a case in which a claimant failed to seek treatment for symptoms later claimed debilitating." Id. The record as a whole does not facially suggest "minimal substantive treatment for the back impairment," and such a finding requires some explanation.

Given the circumstances of the case, the prudent course is a remand to obtain current relevant consultative medical examination. See generally 20 C.F.R. 416.919.

## Conclusion

Having determined that the ALJ erred in his consideration of Dr. McMahon's medical opinion, the court need not address claimant's additional arguments. For the foregoing reasons, as

17

well as those set forth in claimant's legal memoranda, claimant's motion to reverse the decision of the Commissioner (document no. 11) is granted to the extent she seeks a remand for further proceedings, and the Acting Commissioner's motion to affirm her decision (document no. 12) is denied. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 19, 2018

cc: Alexandra M. Jackson, Esq.
 Karen B. Fitzmaurice, Esq.
 Penelope E. Gronbeck, Esq.
 Terry L. Ollila, AUSA